# UNITED STATES DISTRICT COURT
for the
District of Colorado

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person* )
*by name and address)* ) Case No. 17-sw-06273-MEH
)
The e-mail account and information associated with )
ddv52001@yahoo.com that is in the possession of )
Yahoo, whose office is located at 701 1st Avenue, )
Sunnyvale, CA 94089, more fully described in )
Attachment A, attached hereto. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the __State and__ District of __Colorado and elsewhere__ *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    **X** evidence of a crime;

    **X** contraband, fruits of crime, or other items illegally possessed;

    **X** property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. §§ __2252 and 2252A__, and the application is based on these facts:

    **X** Continued on the attached affidavit, which is incorporated by reference.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Philip Jones*
*Applicant's signature*

Philip Jones, Special Agent, FBI
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
                         ☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: **02 Oct 2017**

*Judge's signature*

City and state: __Denver, CO__      Michael E. Hegarty, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

Information associated with the e-mail account known as "ddv52001@yahoo.com" (hereinafter and in Attachment B "SUBJECT ACCOUNT") which is in the possession of or under the control of the E-mail and Internet Service Provider Yahoo whose office is located at 701 1st Avenue, Sunnyvale, CA 94089 (hereinafter and in Attachment B "PROVIDER.")

## ATTACHMENT B

## **DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

Pursuant to 18 U.S.C. § 2703, PROVIDER as described in Attachment A is hereby ordered as follows:

### I.     SEARCH PROCEDURE

a.  The search warrant will be presented to personnel of the PROVIDER, who will be directed to isolate those accounts and files described in Section II below regardless of whether such information is stored, held or maintained inside or outside of the United States;

b.  In order to minimize any disruption of computer service to innocent third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

c.  The PROVIDER's employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant; and

d.  Law enforcement personnel will thereafter review all information and records received from the PROVIDER's employees to determine the information to be seized by law enforcement personnel specified in Section III.

### II.    FILES AND ACCOUNTS TO BE DISCLOSED BY THE PROVIDER'S EMPLOYEES

a.  For the SUBJECT ACCOUNT listed in Attachment A for the time period from the date the SUBJECT ACCOUNT was created, to the date the PROVIDER collects the data in response to this order the PROVIDER shall disclose the following information, and the disclosure shall include all information even if deleted yet still available to the PROVIDER, and all information preserved pursuant to a request under 18 U.S.C. § 2703(f):

   1. The contents of all e-mails and attachments associated with the SUBJECT ACCOUNT, including deleted, stored, or preserved (pursuant to 18 U.S.C. § 2703(f) or otherwise) e-mails sent to and from the account, draft e-mails, existing printouts of any such e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

   2. All records or other information regarding the identification of the SUBJECT ACCOUNT, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses, phone numbers, or other identifying information provided during registration, other associated e-mail accounts, all screen names associated with the subscribers and/or accounts, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

2

3. All records indicating the services available to subscribers of the SUBJECT ACCOUNT;

4. The services the SUBJECT ACCOUNT utilized and all records generated by those services;

5. All records or other information stored at any time by an individual using the SUBJECT ACCOUNT, including address books, contact and buddy lists, calendar data, pictures, and files;

6. All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

7. For all information responsive to this warrant, regardless of whether such information is stored, held or maintained inside or outside of the United States, the physical location or locations where the information is stored.

b. The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

### III.   INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL

a. All information described above in Section II that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5):

1. All electronic mail, attachments, and related computer files that identify the account user, individuals, or correspondents engaged in the purchase, offer, sale, importation, receipt, distribution, and/or possession of child pornography, that identifies the means or methods used regarding such the purchase, offer, sale, importation, receipt, distribution, and/or possession of child pornography or other violations of Title 18, United States Code, Sections 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5);

2. All electronic mail, attachments, and related computer files that evidences or identifies the means of payment or financing of the sale, importation, transportation, receipt, distribution, and/or possession of child pornography or other violations of Title 18, United States Code, Sections 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5);

3. All "address books" or other lists of correspondents;

4. All saved "chat" transcripts that identify a sexual interest in minors and/or violations of Title 18, United States Code, Sections 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5);

5. Any and all records, documents, visual depictions, and materials pertaining to child pornography, child erotica, an interest in such materials, or pertaining to a sexual interest in children, or sexual activity involving children;

6. Any and all information, notes, software, documents, records, or correspondence, in any form and medium pertaining to any minor who is, or appears to be, the subject of any visual depiction of child pornography, child erotica, sexual activity with other minors or adults, or of sexual interest, or that may be helpful in identifying any such minors;

7. Records relating to who created, used, or communicated with the SUBJECT ACCOUNT or identifier, including records about their identities and whereabouts.

### IV. ORDER OF NON-DISCLOSURE AND TO KEEP ACCOUNT ACTIVE

a. Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), the Court orders PROVIDER not to disclose the existence of this search warrant to any person, including the subscriber, other than its personnel essential for compliance with the execution of this warrant.

b. The Court further orders PROVIDER to continue to maintain the SUBJECT ACCOUNT in an open and active status so as not to disrupt this ongoing investigation.

### V. PROVIDER PROCEDURES

a. The PROVIDER shall deliver the information set forth above within **14 days** of the service of this warrant and the PROVIDER shall **disclose responsive data, if any, by sending to the below address and using the US Postal Service or another courier service, notwithstanding 18 U.S.C. 2252A or similar statute or code.** and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

> Special Agent Philip Jones
> FBI
> 2915 Rocky Mountain Avenue
> Suite 210
> Loveland, CO 80538

b. Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

### VI. DEFINITIONS

a. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.

b. "Child Pornography" as used herein is defined in 18 U.S.C. § 2256(8). (Any visual depiction, including any photograph, film, video, picture, or computer or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

c. "Visual depictions" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

d. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions; this also includes texts or discussions regarding minors engaged in

4

sexual acts or conduct.

## AFFIDAVIT

I, Philip Jones being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I have been employed as a Special Agent of the Federal Bureau of Investigation (FBI) since January 2015, and I am currently assigned to Denver Division, Fort Collins Resident Agency. As part of my duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A. I have received training and instruction in the field of investigation of child pornography and have had the opportunity to conduct investigations relating to the sexual exploitation of children. As part of my training and experience, I have reviewed images containing child pornography in a variety of formats (such as digital still images and video images) and media (such as digital storage devices, the Internet, and printed images).

2. This affidavit is made pursuant to Title 18, United States Code, Section 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), in support of an application for a warrant to search the e-mail account described in Attachment A (hereinafter "SUBJECT ACCOUNT") and all content found therein, there being probable cause to believe that located in the place described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252 and 2252A are present at the location described.

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## RELEVANT STATUTES

5. This investigation concerns alleged violations of 18 U.S.C. Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors.

6. 18 U.S.C. Sections 2252 and 2252A prohibit a person from knowingly possessing or accessing sexually explicit images (child pornography) with the intent to view them as well as transporting, receiving, distributing or possessing in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, any visual depiction of minors engaging in sexually explicit conduct (child pornography).

## DEFINITIONS

7. The following definitions apply to this Affidavit and Attachment B to this Affidavit.

8. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

9. "Visual depictions" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image See 18 U.S.C. § 2256(5).

10. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

11. In this affidavit, the terms "computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and are intended to include any physical object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, mobile phones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

## BACKGROUND REGARDING THE INTERNET

12. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions, including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet – for example, through a university, an employer, or a commercial service – which is called an "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below). Once the individual has accessed the Internet, that individual can use an e-mail account provided by their ISP or they can use the Internet to connect to web-based e-mail services (such as those provided by Google and Microsoft Hotmail) to send and receive e-mail. Web-based e-mail services provide e-mail accounts that may be accessed from any computer that has access to the World Wide Web. In addition, the individual can access websites using web browsers (computer programs that permit users to navigate through pages of information that are stored on remote computers, such as Microsoft's Internet Explorer and Mozilla Firefox) to view or download content, or make purchases. The Internet may also be used to access e-groups (websites that require users to subscribe, and permit subscribers to post messages, chat electronically, post and transfer files and share information), newsgroups (that permit posting of e-mail messages regarding specific topics) and video conferencing.

13. **E-mail Provider**:

    A. In my training and experience, I have learned that Yahoo (hereinafter "Provider") provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public. Subscribers obtain an account by registering with Provider. During the registration process, Provider asks subscribers to provide basic personal information. Therefore, the computers of Provider are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Provider subscribers) and information concerning subscribers and their use of Provider services, such as account access information, e-mail transaction information, and account application information.

    B. In general, an e-mail that is sent to a Provider subscriber is stored in the subscriber's "mail box" on Provider servers until the subscriber deletes the e-mail, or until a preservation letter is sent to the e-mail provider. If the subscriber does not delete the message, or if the e-mail provider preserves the content of the account pursuant to a preservation letter, the message can remain on Provider servers

   indefinitely.

   C. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Provider servers, and then transmitted to its end destination. Provider often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail, or if the e-mail provider preserves the content of the account pursuant to a preservation letter, the e-mail can remain on the system indefinitely.

   D. Provider subscribers can also store files, including e-mails, address books, contact or buddy lists, pictures, and other files, on servers maintained and/or owned by Provider.

14. **Internet Service Providers ("ISPs"):**

   A. ISPs are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and personal password.

   B. ISPs maintain records ("ISP records") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage," see 18 U.S.C. § 2510(17), and the provider of such a service is an "electronic communications service." An "electronic communications service," as defined by statute, is "any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service." 18 U.S.C. § 2711(2).

15. **Internet Protocol Address ("IP Address")**: Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of numbers separated by periods; an example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISPs employ dynamic IP addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a

8

period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session. Once the session ends, the IP address is available for the next dial-up customer. On the other hand, some ISPs, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer. A modem is an electronic device that allows one computer to communicate with another.

16. A host computer is one that is attached to a dedicated network and serves many users. These host computers are sometimes commercial online services, such as America Online (AOL), which allow subscribers to connect to a network, which is in turn connected to their host systems. These service providers allow electronic mail service between their own subscribers, and those of other networks or individuals on the Internet.

17. Some of these systems offer their subscribers the ability to communicate publicly or privately with each other in real time in the form of "chat rooms." Contact with others online can be either open and anonymous, or private and personal in the form of person-to-person instant messages.

18. Collectors and distributors of child pornography often use online resources to retrieve, share, and store child pornography. Non-pornographic, seemingly innocuous images of minors are often found in email accounts that also contain child pornography, or that is used to communicate with others about sexual activity or interest in children. Such images are useful in attempting to identify actual minors depicted in child pornography images found during the execution of a search warrant. In certain cases, such images may also assist in determining the origins of a particular child pornography image or series of images. Further, the online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. These online storage accounts are often free but can involve a charge. A subscriber assigned a free online storage account frequently can set up such accounts by providing limited identifying information. Any information provided is frequently fictitious in an attempt to preserve the anonymity of the user. Consequently, even if it is known that a collector or distributor of child pornography is a subscriber of a free online storage service, the service provider frequently will have no records in that subscriber's name. Instead, the online service will only be able to identify files, including child pornography, that are associated with a "login," or unique, user-created identity the subscriber uses to "log on" to the online service. Such an online storage account is particularly useful to a collector or distributor of child pornography. Such a subscriber can collect, store, view and distribute electronic images, including child pornography, directly from the online service. Consequently, the illegal files have minimal contact with the subscriber's home computer. The subscriber can also manipulate the files on an online storage service from any computer connected to the Internet. Nonetheless, evidence of an online storage account is often found on a home computer of a user subscribing to such a service. Evidence of an online storage account may take the form of passwords located in encrypted, archived[1], or other files on the user's home computer. Other evidence can also be found through unique software that may exist on a user's home computer that has been developed by the online storage service. This unique software will frequently contain evidence not only of the existence of such accounts, but the login and password.

## INVESTIGATION AND SUBJECT OF SEARCH WARRANT

19. On July 20, 2017, Longmont Police Department (LPD) received a report from the parents of a 16-year-old

---

[1] Archive files are files which generally contain other files in a compressed format. Thus, Archive files may be thought of as containers containing other files. Archive files are commonly referred to as "zip" or "zipped" files.

victim, Ryan Adler of Longmont, Colorado, after Adler's parents searched his telephone following the discovery of sex toys in Adler's room. Adler's parents found images and videos on the telephone of Adler engaged in sex acts with an adult male identified as Ryan McCraw of Aurora, Colorado.

20. Adler's parents also reported finding messages between McCraw, Adler and a male apparently from San Francisco, who told Adler that he was planning to fly to Colorado in order to "punish" and rape Adler, then let all of his friends rape Adler. Adler seemingly agreed to go along with the rape, but he feigned an illness when the male believed to be from San Francisco arrived in Colorado.

21. Investigators have gained access to a cell phone belonging to Ryan Adler based on parental consent, and Adler has been forensically interviewed.

22. Adler exchanged multiple emails with the user of ddv52001@yahoo.com. The content of these emails appears to be consistent with the description of conversations provided by Adler's parents in reference to the male believed to be from San Francisco. As demonstrated through Recon messages, email messages and statements made by Adler provided below, the user of ddv52001@yahoo.com was aware of Adler's true age, 16, and requested that Adler send images of his penis via email.

23. Detective Bryan Franke, LPD assigned to the Boulder County Computer Forensics Lab, extracted content from Adler's cell phone based on parental consent. Detective Franke conducted an open source check of email address ddv52001@yahoo.com and located a message board post on www.ancestry.com, in which the poster advised that his name is David De Vere and provided email address ddv52001@yahoo.com, telephone number 408-736-5050 and address 950 Chehalis Drive, Sunnyvale, California 94087.

24. I followed up with a Lexis Nexis Accurint query and noted that David Edward DeVere [Note: The spacing between "De" and "Vere" is not present in NCIC, California Department of Motor Vehicles (DMV) and Lexis Nexis records; however, the spacing is present in Virginia DMV records] of 950 Chehalis Drive, Sunnyvale, CA 94087, telephone number 408-736-5050, has a date of birth (DOB) of May 25, 1965. Lexis Nexis reports previous and/or current addresses of 501 Holland Lane, Unit 913, Arlington, Virginia and 13366 Potomac Path Drive, Woodbridge, Virginia. California Department of Motor Vehicles provided DeVere's DOB as May 25, 1965, address 950 Chehalis Drive, Sunnyvale, California 94087, blond hair, blue eyes, 5'9" and 170 pounds.

**Forensic Interview**

25. During a forensic interview with Blue Sky Bridge, Adler provided information about an adult male believed to be in San Francisco, possibly 40 years or older with short brown hair. Adler received a photograph of this male through email, and he believed the male's name began with the letter "D," possibly David or Dave. Adler believes that the male used to live in New York.

26. Adler described the user of ddv52001@yahoo.com [hereinafter ddv52001] as scary and intimidating. Adler had to call ddv52001 "Master" or "Sir." Adler believed that McCraw was nice, but ddv52001 took things to the extreme. Adler had to request ddv52001 for permission to "jerk off."

27. Adler believes he met ddv52001 online approximately the same time he met McCraw. Adler was aware that McCraw and ddv52001 spoke, but he does not believe they met in person.

28. Ddv52001 requested pictures of Adler's face and "private parts." Adler sent these photos to an email address he believes started with "ddv." Adler believes he spoke with ddv52001 a few times on the phone.

29. At some point, ddv52001 arranged to travel to Denver to meet with Adler. Adler believes ddv52001 booked a flight to Denver and booked a hotel room. Ddv52001 told Adler to arrange for a way to meet ddv52001 at the hotel room. Adler ended up telling ddv52001 that he was sick and would not be able to meet ddv52001

10

due to a feigned illness. Adler was afraid of what would happen if he met ddv52001 in person because ddv52001's attitude toward sex was "dark."

### Recon Conversations between McCraw and Master501

Reference: McCraw = "TheDenverDaddy"
"Master501" = ddv52001@yahoo.com

30. The following conversations occurred between McCraw and Master501/ddv52001 through the dating website Recon using a messenger feature. McCraw appears to have taken screen shots of the messages and shared these conversations with Adler through WhatsApp. These conversations were located on Adler's phone. The actual dates and order of most of these conversations is unknown at this time:

31. A screenshot of Master501's Recon page provides the following information: "Master501, United States, Virginia, Alexandria," a photograph of an adult male wearing a dark color hat and unbuttoned collared shirt; Age: 51; Role: 100% Active; height: 5'9" Interests: Bondage, Feet; Hair: Blond; Body Hair: Shaved; Ethnicity: White

32. Master501 – "Hello Denver Daddy…Glad to see you online. I sent my fag slave Ryan some basic protocol for you to review and include when training him this weekend. He has orders to share it with you."

33. Master501 – "It would be great if you could work with the little fuck hole faggot on some basic slave positions, basic body rules (denial, shaving, etc.), and some non verbal commands. I have more info to send…if you have a direct email ?"

34. Master501 – "How did it go with my fag last night ?"

35. TheDenverDaddy – "…Yes, he [Adler] sent me all your rules and agree with the majority of them and understand the reasoning behind all of them. I have owned 4 boys long term myself and have trained 12. The only concerns I had was the rule about chastity training, he had expressed a big interest in that and it would not be much different from him nor touching his own cock listed in the other rule. If you wanted to have control of the lock I could certainly give you the combination to it or use a lock box with the key and give you the combo."

36. TheDenverDaddy – "Good afternoon Master501, The first training went very well, he came down to my home and stayed the night. He took to training exceptionally well, enjoyed the collar and leash training, the Kennel training, for extensive bottom use, and stated on his chastity training. He has been doing so well with the chastity lock and training I have been bey [sic] impressed. He is an eager, excited, adorable, and sexy young Pup/Boy to be sure!"

37. Master501 – "DenverDADDY – I recognize and respect your level of experience and knowledge in training slaves/pups/boys. Most of the men that responded to the fag's profile are game players and a complete waste of time. What I want, is a MASTER who thinks and trains in line with my own philosophy. I myself have trained numerous boys part time, and have owned and kept three full time slaves as 24/7/365 animals – The first two for five years each, and the last for three. I currently have a part time (shared) slave faggot in NYC (Slavebrad on recon) which is locked into permanent denial. Oh…how the fag pleads and whimpers about that! :D"

38. Master501 – "I really like your ideas about chastity…either locking my little fag boy and sending me the key, or perhaps using the lock box with the combo. Either is very acceptable…you indicate that you see control over the boy's chastity as my prerogative…and that is as it should be."

39. Master501 - "My overall thought is, that I want to have you help train/prepare/guide the little fag to be the

best slave possible…so when it finishes HS, it can become my next 24/7. It does have a DADDY in Seattle, and I am comfortable with that arrangement…but hopefully, it will still want to become permanent property when the time is right. Your mentorship and the influence of your well-trained experienced boys/pups will really help it learn and grow."

40. Master501 – "Perfect! I am a stickler about monitoring a boy's schedule and location 24/7. It is imperative that the little fag have a set schedule with chores/duties/work, and that he learn that any fuck ups will earn a stiff paddling or beating with the strap/belt. I myself use several paddles/belts/straps for basic discipline…and the cane for stubborn or rebellious boys who need a stern reminder. I will have some dog tags made to show the fag's ownership. I can mail those to you, and the boy can begin wearing them. My immediate goal for the fag, is that he learn focus and discipline. Like most 16 year old teens, he is horny as hell…and so is busy making contact with a ton of other MASTERS/subs. That needs to stop: Period. The boy needs to focus on learning how to be a good slave, to focus on a SUPERIOR ALPHA MALE or slave/pup brothers, and on his chores/duties and how to work hard to please/satisfy his OWNER."

41. Master501 – "I am hoping to visit Denver in late April, to check on the fag's progress and meet him in person for my initial inspection/training with him. He won't be fully trained by then…but I-" [remainder of message cut off during screen shot of conversation]

42. April 7, 2017, The Denver Daddy – "Yes he has access to the lock box with the combo, it is in his dresser drawer. He has been doing so well with the lock, has been locked for 5 days however last night he slit it off apparently, getting his balls through the back ring. I will have to put a smaller back ring on him on Saturday"

43. Master501 – "Hello Denver DADDY – I am booked to come to Denver this coming weekend (April 21-23) I am planning on inspecting/using the boy on Friday night (April 21). He may ask you to help him with transportation to Denver to my hotel. It would be a pleasure to meet you, if that is possible. Let me know if you are available to help the boy with transportation, and if you are open to meeting/sharing him on Friday night. Master 501 DDV52001@yahoo.com"

## Emails from ddv52001@yahoo.com to Adler

44. The following emails were shared with McCraw by Adler through use of WhatsApp and were located on Adler's phone:

45. Re: Training at 11:49 AM, date unknown, from ddv52001@yahoo.com to Adler – "Boy – I am not against TheDenverDADDY either training or using you at all. But I want to first discuss with him exactly what he wants to do, and also let him know my rules for how you are to be trained/used. Once some ground rules have been set, there won't be any problem…in fact, I will encourage him to use you. MASTER"

46. RE MASTER'S visit next weekend at 12:19 PM, date unknown, from ddv52001@yahoo.com to Adler – "Hello boy, MASTER was able to book HIS flights and hotel for next weekend. SIR will confirm these tomorrow morning, and send boy the details of where HE will be staying (Grand Hyatt – Downtown Denver). SIR expects to fly into Denver on Friday night, and fly back to DC on Sunday morning. Boy can meet MASTER in downtown Denver Saturday afternoon or evening. SIR"

47. The following emails were located in Adler's email folder on his phone. These emails serve to show that the user of ddv52001@yahoo.com requested and received nude photographs of a juvenile male, knew Adler's true age, expressed the intent to further distribute these images as well as ddv52001's sexual intentions for Adler. The following emails do not represent all messages sent and received:

48. The first email observed is sent on March 26, 2017 at 7:33 PM from Adler, radler2019@gmail.com, to ddv52001@yahoo.com – "Hello sir, this is the faggot from Recon. I will be awaiting your orders sir. I look

forward to hearing from you. Your boy, Ryan"

49. March 26, 2017 at 7:52 PM, ddv52001 to Adler – "Boy- You will send MASTER clear pics of HIS little bitch boy…so SIR can see the faggot HE has claimed as HIS property. First orders for boy – 1. Faggot will change its Recon profile to show it is now OWNED. 2. MASTER wants to see some pics of boy torturing its pathetic useless dick and balls, so these can be shared with SIR's brutal MASTER friends…SIR wants to subject boy to ridicule and have SUPERIOR MEN laugh and humiliate this fag for being such a stupid piece of shit. SIR."

50. March 26, 2017 at 8:03 PM, Adler to ddv52001 – "Yessir! Although I'm not sure how I would torture my own cock and balls sir. If you could help give your faggot some help it would be greatly appreciated. Thank you SIR."

51. March 26, 2017 at 8:13 PM, ddv52001 to Adler – "Boy – MASTER wants this faggot to torture your balls by taking them in your hand, and slowly crushing them. SIR wants HIS faggot to feel deep apin [sic] and nausea from the abuse…make it hurt, little fucker! And boy will beat his exposed and defenseless dick meat with a metal or wooden ruler if he has one. MASTER wants to see pics of boy's face, chest, dick/balls, ass, and legs. SIR"

52. March 26, 2017 at 8:24 PM, Adler to ddv52001 – "Yessir. I will get hose [sic] photos to you tonight master. And sir I think there is something you should know sir. Please respond. Your property, Ryan"

53. March 26, 2017 at 8:43 PM, ddv52001 to Adler – "What should this MASTER know, boy ??? SIR"

54. March 26, 2017 at 8:46 PM, Adler to ddv52001 – "Sir you need to know two things. One being my age sir. Now, please don't block/report me for saying this sir, but I am not 18. I am 16 and I need a master to set me straight. I'm very sorry master. And the other is regarding my relationship. I am in an open relationship with a daddy who lives in Seattle. He is the love of my life, and I have to choose him or you master. I really hope these don't change anything sir. I'm very sorry. Ryan"

55. March 26, 2017 at 8:52 PM, ddv52001 to Adler – "Boy, This does not change MASTER'S desire to own/claim you. SIR knows this boy needs a very strict, sadistic, brutal MASTER DADDY to set you straight and to put you in your place. But…you will have to choose. This MASTER does not share HIS boy with other men…either you are my property, or you belong to the Daddy in Seattle. You can't belong to both of us. SIR"

56. March 27, 2017 at 5:24 AM, ddv52001 to Adler – "STUPID WORTHLESS FAGGOT – MASTER saw that you added HIS pic to your Public Gallery on Recon. You need to alter your text in your profile to show that SIR ***OWNS*** you along with Seattle DADDY. SIR"

57. March 27, 2017 at 8:46 AM, Adler to ddv52001 – "Yessir! I will change my profile text immediately sir. I hope you slept well master. Worthless shit, Ryan"

58. March 27, 2017 at 10:32 AM, ddv52001 to Adler – "GOOD BOY! Make sure when you edit, that you use MASTER or DADDY and SIR. When you say you like Daddys…you can type it as SIR has…but when you refer to this boy's specific DADDY or MASTER, it BETTER BE IN CAPS. Make sure you use MASTER or DADDY'S when showing that we possess you. SIR" [This is in response to Adler sending drafts of his Recon profile update to ddv52001.]

59. March 27, 2017 at 1:16 PM, ddv52001 to Adler – "INFERIOR LOWLIFE WORTHLESS FAG CUNT – MASTER requires and orders HIS boy to send more pics of boy's face, body, legs, dick/balls, etc. SIR wants to enjoy seeing the useless and utterly pathetic faggot HE has claimed as his property. This boy will also torture and abuse its balls and dick as SIR ordered last night. What a fucking piece of stinking DOG SHIT you are, queer boy asswipe fag scum. MASTER"

60. March 27, 2017 at 3:36 PM, Adler to ddv52001 – "Yessir! I will get those pictures to you as soon as I can sir. An inferior fag scum like me always has to obey his master NO MATTER WHAT. Your slave, Ryan"

61. March 27, 2017 at 5:43 PM, Adler to ddv52001 – "Thank you SIR. [Adler sends the following photographs: A close up photograph showing fingers from his right hand inserted into his anus. A photograph depicting Adler on his back while holding his legs spread to the side to expose his anus and genitals. A photograph depicting Adler on all fours with his rear toward the camera exposing his anus and genitals. A photograph depicting Adler on all fours from the rear left angle, exposing his genitals and anus. A close up photograph of Adler inserting a finger into his anus.] Ryan."

62. March 28, 2017 at 4:35 AM, ddv52001 to Adler – "Good Morning, boy. MASTER demands and requires that this boy must be locked into chastity, and must also wear a butt plug every day. [Ddv52001 gives examples of devices] If boy is very obedient and does EXACTLY as it is told, SIR will reward it later with a full steel chastity belt custom made for boy. Boy must be locked securely into chastity, and must send MASTER the key. [Ddv52001 then instructs Adler on shaving from the neck down.] MASTER" [This is in response to Adler's question to ddv52001 if Adler should wear anything specific.]

63. March 28, 2017 at 7:39 AM, ddv52001 to Adler – "Boy – What a FUCKING PIECE OF STINKING FILTHY DOG SHIT you are, faggot. No one cares about you. You are the lowest form of sewer scum…and you deserve to be locked into permanent denial, with NO access to your pathetic little pig dick or useless balls. You are OWNED, little boy. You no longer have any say in what is done to you. SIR and HIS friends are going to rape/torture and abuse you without mercy or compassion. SIR"

64. March 28, 2017 at 8:34 AM, Adler to ddv52001 – "Thank you SIR. A faggot like me only reason for living is to take care of his master and his masters friends, NO MATTER WHAT. I am proud to me [sic] your piece of garbage homo. Ryan"

65. Adler and ddv52001 continued to discuss sex, the possibility of ddv52001 traveling to Colorado in order to have sex with Adler, and the possibility of ddv52001 having other males have sex with Adler. Ddv52001 advised on April 3, 2017 at 11:35 AM that ddv52001 "converted a garage/barn dungeon" in California, and "Here in Virginia, SIR has a large basement dungeon what would be used as slave quarters/ area. Boy would spend 90% of its time naked/caged/shackled/chained in the basement….being repeatedly raped/fucked several times a day. SIR has a LOT of gear…MASTER has owned slaves (including three previous 24/7 boys) for over 20 years."

66. April 6, 2017 at 10:25 AM, ddv52001 to Adler – "[discussion of ddv52001 having sex with Adler in public] SIR has given drugs to HIS previous slaves to help them to accept even more pain or to help them take harder/rougher fucking by MASTER and HIS friends. SIR could certainly see overpowering boy with chloroform the minute you walk in the hotel room, or feeding boy some drug to make you even more submissive and easy to control. [Ddv52001 explained that he would not give drugs to Adler during their first sessions and his attempts to speak with Ryan McCraw on Recon again]"

## EVIDENCE

67. I know from training and experience that digital evidence is not limited to computers. I have been involved in cases where persons with an interest in material depicting the sexual exploitation of children can access the Internet, display images of child pornography, and communicate with other individuals with the same interest using digital storage devices to include cellular telephones, e-mail devices, gaming consoles and personal digital assistants. These devices are frequently found to contain chat communications in the form of short message service (SMS) messages as well as enabling Internet and digital cellular network access.

68. I know from training and experience that persons trading in, receiving, transporting, distributing, or possessing images involving the sexual exploitation of children or those interested in the firsthand sexual

14

exploitation of children often communicate with others through correspondence or other documents (whether digital or written) which could tend to identify the origin of the images as well as provide evidence of a person's interest in child pornography or child sexual exploitation.

69. I know from training and experience that the complete contents of e-mail accounts may be important to establishing the actual user who has dominion and control of an e-mail account at a given time. E-mail accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider. They may also be used by multiple people. Therefore, the content of a given account, including the e-mail accounts that send messages to a given account often provides important evidence regarding the actual user's dominion and control of an e-mail account.

70. I know from training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or code words (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren ":)" to convey a smile or agreement) to discuss matters. Keyword searches would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement familiar with the identified criminal activity is necessary to find all relevant evidence within the account.

71. Based upon training and experience, I know that persons engaged in online activities involving a sexual interest in children or child erotica are also often involved in online activities involving the production and possession of child pornography. Likewise, I know from training and experience that persons involved in online activities involving the production and possession of child pornography are often involved in online activities involving the production and possession of child erotica.

72. Based on my training, knowledge, experience, and conversations with others in law enforcement, I understand that an individual who possesses images and/or videos depicting child pornography on one digital storage devices and/or Internet email or online storage account is likely to possess child pornography on additional digital storage devices and/or Internet email or online storage accounts that s/he possesses. Additionally, based on this training and experience, I understand that an individual who discusses the sexual abuse and/or exploitation of children on one digital storage device is likely to conduct those communications on additional digital storage devices that s/he possesses.

73. I recognize the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and in Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. I advise that it would be impractical and infeasible for the Government to review records produced by a Service Provider and keep only such records as the Government finds to be related to the offenses described herein and in Attachment B during a single analysis. I have learned through practical experience that various emails often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole. In other words, the weight of each individual piece of the data fluctuates based upon additional investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole. Analysis is content-relational, and the importance of any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually, and not in sum. Due to the interrelation and correlation between e-mail threads, and any respective attachments, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original. In the past, I have reviewed activity within email accounts pursuant to search warrants in the course of ongoing criminal investigations. I have learned from that experience, as well as other investigative efforts, that multiple reviews of the activity in the account at different times is

necessary to understand the full value of the information contained therein. In order to obtain the full picture and meaning of the data from the information sought in Attachments A and B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the emails and data must be assessed within the full scope of the investigation. As such, I respectfully request the ability to maintain the whole of the data provided by the Service Providers, and to review the communications in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one time. As with all evidence, the Government will obtain the mirrored images in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

74. This application seeks a warrant to search all responsive records and information under the control of Yahoo, a provider subject to the jurisdiction of this court, regardless of where Yahoo has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Yahoo's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States. [2]

### REQUEST FOR NON-DISCLOSURE AND TO KEEP ACCOUNT ACTIVE

75. Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), I request the Court order Provider not to notify any other person of the existence of this warrant. This request is made because notification of the existence of the warrant will result in destruction of or tampering with evidence.

76. Because the investigation is ongoing, I would further request the Court to order Provider to continue to maintain the account further detailed in Attachment A, in an open and active status.

### CONCLUSION

77. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

78. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of Title 18, United States Code, Sections 2252A(a)(1), (2), (3), and (5) and 2252(a)(1), (2), and (4) may be located within the e-mail account described in Attachment A.

79. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the

---

[2] It is possible that Google stores some portion of the information sought outside of the United States. In Microsoft Corp. v. United States, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information—including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of Google. The government also seeks the disclosure of the physical location or locations where the information is stored.

items listed in Attachment B.

                                            _s/Philip Jones_____
                                            Philip Jones, Special Agent
                                            FBI

SUBSCRIBED and SWORN before me this __2nd__ day of October 2017

*Michael E. Hegarty*
UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by Valeria Spencer, Assistant United States Attorney.